# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RAYAN R., a Minor, Individually and By and Through His Parent, MICHELLIE R., and MICHELLIE R., Individually and on her own behalf,<br><br>Plaintiffs,<br><br>v.<br><br>NORTHWESTERN EDUCATIONAL INTERMEDIATE UNIT NUMBER 19,<br><br>Defendant. | CIVIL ACTION NO. 3:11-CV-1694<br><br>(JUDGE CAPUTO) |

## MEMORANDUM

Presently before the Court is the Defendant's Motion to Dismiss Plaintiffs' Complaint. (Doc. 5). Plaintiffs are appealing an administrative determination as to the free and appropriate education afforded to Plaintiff Rayan R. Defendant argues: (1) that the Complaint is not a "a short and plain statement of the claim" as required by Federal Rule of Civil Procedure Rule 8; and (2) that the Complaint fails to plead a claim under the Rehabilitation Act and the Americans with Disabilities Act. The Court disagrees, and for the reasons below, will deny Defendant's Motion.

## BACKGROUND

Plaintiffs allege the following in their Complaint. Plaintiff Rayan R. is a seven year old child who moved with his family from Puerto Rico to Scranton, Pennsylvania when he was four years old. He has been diagnosed with Autism, Borderline Intellectual Functioning, Attention Deficit Hyperactivity Disorder-Combined, Oppositional Defiant Disorder, and Adjustment Disorder. He also has significant delays with language, emotions, social skills, peer interaction, frustration tolerance, adaptive skills, sensory integration, and

auditory processing. Michellie R. is Rayan's mother. Her primary language is Spanish and she speaks very little English.

In light of Rayan's developmental issues, the Northeastern Educational Intermediate Unit Number 19 ("NEIU") was grossly inappropriate and indifferent in addressing his specific educational needs. As a result, the NEIU delivered substandard services to Rayan, denying him a free and appropriate education ("FAPE") as required by law.

Only five days after Rayan started a Head Start Program in February 2009, he was referred to the NEIU as requiring early intervention services. Even though Head Start informed NEIU about Rayan's behavioral problems, the NEIU failed in its duty to provide Rayan with necessary services. NEIU instead elected to wait the entire sixty-day evaluation period before considering specific measures. In particular, the NEIU failed to translate Rayan's records from Spanish into English, failed to appropriately evaluate Rayan as to miss his Intellectual Disability and Autism diagnoses, and failed to devise a proper educational program for his needs. However, Rayan's significant behavioral problems ultimately caused the Head Start Program to reject him. The NEIU then referred Rayan on March 25, 2009 to the Friendship House, a partial hospitalization program that the NEIU knew was not an educational placement.

After his referral to the Friendship House, NEIU continued to fall short of meeting Rayan's educational needs as it "virtually washed its hands" of Rayan. (Compl. at 2, Doc. 1). On May 8, 2009, the NEIU's released a deficient Educational Report ("ER") for Rayan which did not contain many of Rayan's available records, did not sufficiently rely on evaluations, and failed in many ways to take into account Rayan's linguistic and cultural background. Rayan's May 26, 2009 individualized educational program was similarly

deficient.  The NEIU additionally failed to conduct interagency meetings to determine the scope of necessary programs and services for Rayan and Rayan's mother was generally excluded from these processes.

Notably, the NEIU failed to appropriately transition Rayan to the age-appropriate program in the district, even though it was aware as of February 23, 2009 that Rayan intended to begin kindergarten in the fall.  While transition services should have begun at least ninety days prior to the start of the program, the NEIU did not begin transition until August 3, 2009–only three weeks before Rayan was supposed to begin kindergarten–and even then it failed to forward Rayan's records to his school.  An individualized education program was not finally made until December of 2009.

Plaintiffs raised the above problems in an administrative Special Education due process hearing  under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and Chapters 14 and 15 of the Pennsylvania Code.  At the hearing, Plaintiffs sought a determination that Rayan had been denied an appropriate services and to compel: (1) an Independent Educational Evaluation ("IEE") at the public's expense; (2) full days of compensatory education for the period of February 23, 2009 through December 18, 2009; and (3) attorney's fees and costs.  The Special Education Hearing Officer found for the Plaintiffs in finding that the NEIU failed to properly appropriately evaluate Rayan and that it had failed to offer appropriate special education services from February 23, 2009 to the first day of school in the fall.  However, the Hearing Officer erroneously ruled that the NEIU had offered appropriate placement and transition services fo Rayan, did not order an IEE at public expense, and inappropriately limited Rayan's award of compensatory education

3

to half-days at NEIU rates for the period between May 8, 2009 (instead of February 23, 2009), through the first day of the 2009-2010 school year (instead of December 18, 2009). It is these administrative decisions that Plaintiffs now appeal.

Plaintiff filed their Complaint with the Court on September 8, 2011.  (Doc. 1). Defendant moved to dismiss on November 18, 2011, arguing that Plaintiffs' Complaint failed to meet the "spirit and letter of Rule 8," and that the Plaintiffs also failed to state a claim as to Section 504 or the Americans with Disabilities Act.[1]  (Def.'s Br. at 7, Doc. 6).  Briefs were submitted and oral argument was held before the Court on February 3, 2011.  As such, the Motion to Dismiss is now ripe for the Court's review.

## **DISCUSSION**

**I. Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of their claims.  *See Scheuer v. Rhodes,* 416 U.S. 232, 236 (1974).  The Court does not consider whether a plaintiff will ultimately prevail.  *See id.* A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States,* 220 F.3d 169, 178 (3d Cir. 2000).

"A pleading that states a claim for relief must contain . . . a short and plain statement

---

[1] Defendant also mentions that "the only relief sough is monetary damages, which are not permissible under the IDEA."  (Def.'s Br. at 1, Doc. 6).  Yet, on the next page, Defendant summarizes that "Parents do not seek any relief that is not available under the IDEA" and does not again return to the issue.  (*Id.* at 2).  As such, the Court declines to address this argument.

4

of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Detailed factual allegations are not required. *Twombly,* 550 U.S. at 555. However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Instead, a complaint must "show" this entitlement by alleging sufficient facts. *Id.* "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

As such, the inquiry at the motion to dismiss stage is "normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element, *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "When there are well-pleaded factual allegations, a court should assume their

5

veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950.

In deciding a motion to dismiss, the Court should consider the allegations in the complaint, exhibits attached to the complaint, and matters of public record. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss. *Id.* The Court need not assume the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256, 263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'" *Morse v. Lower Merion Sch. Dist.,* 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)).

**II.  Dismissal for Non-Compliance with Federal Rule of Civil Procedure Rule 8**

Defendant NEIU argues that Plaintiffs' Complaint is too long and complicated, and as such, does not "meet the spirt and letter of Rule 8" and should be dismissed. (Def.'s Br. At 7, Doc. 6). Specifically, NEIU argues that the Complaint "contains 'impertinent and unnecessary material' that makes framing an Answer unnecessarily complicated and packed with ethical pitfalls in a convergence requiring, essentially, a 'brief in opposition to the complaint.'" (*Id.* at 6 (quoting *Drysdale v. Woerth*, No. Civ. Act. No. 98-3090, 1998 WL 966020 at *2 (E.D. Pa. Nov. 18, 1998))).

Federal Rule of Civil Procedure Rule 8 insists on a "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, Rule 8(d)(1) requires each allegation to be "simple, concise, and direct." Determining

6

conformance with Rule 8 is reviewed by a circuit court for abuse of discretion. *In re Westinghouse Sec. Litig.*, 90 F.3d 696 (3d Cir. 1996).

When similarly faced with a complaint that was allegedly too detailed and conclusory, *Correctional Medical Care, Inc. v. Gray* held that dismissal was "too harsh a remedy" where the plaintiffs "used 135 short, numbered paragraphs over twenty-five pages to state their nine claims." Civ. Act. No. 07-2840, 2008 WL 248977 at *9 (E.D. Pa. Jan. 30, 2008). This amount of elaboration was deemed below the sanctionable line, *Id.*, especially in comparison to *Westinghouse* where the dismissed complaint "ramble[d] for more than 600 paragraphs and 240 pages, including a 50-plus page 'overview' of the alleged wrongful conduct." 90 F.3d at 703. Moreover, *Gray* assured the worried defendants that it could successfully ignore any conclusory pleadings, making it unnecessary to strike the entire complaint. 2008 WL 248997 at *9.

Here, the Complaint elaborates rather substantially on its claims. It is a total of thirty-four pages and ninety-eight paragraphs. Though each paragraph is not as concise as it could otherwise be, the Court cannot hold that this Complaint is so excessively detailed or complex as to work a violation of the Rules of Civil Procedure, much less a violation warranting dismissal. *See e.g. Simmons v. Abruzzo*, 49 F.3d 83, 87 (2d Cir. 1995) ("Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." (quotation omitted)). Further, to the extent that this action is a review of administrative proceedings, the Court understands that such a complaint may be lengthier and contain more legal background than it might in simpler circumstances.

Insofar as Plaintiffs' Complaint alleges violations of "Pennsylvania law" but does not

specify as to the exact statutory provisions, the Court is similarly unpersuaded that this lack of detail merits dismissal. Plaintiff explains that "Pennsylvania has promulgated regulations pursuant to IDEA and Section 504, and Plaintiffs alleged in the Due Process proceedings, and alleges [sic] in this matter, that Defendant's conduct with regard to Rayan violated these Pennsylvania regulations at the same time it violated IDEA, Section 504, and applicable federal regulations." (Pls.' Br. at 7, Doc. 7). While ordinarily such an omission would be problematic in serving to provide notice to the parties and the Court, the instant action seeks review and reversal of an administrative proceeding. Therefore, to the extent that any particular Pennsylvania law played a supporting role in these administrative determinations, the Court is satisfied that the record will fully reflect this. Moreover, as NEIU's present counsel represented Defendant at all stages of that underlying administrative hearing, the Court is further satisfied that the Defendant is well aware of the particular Pennsylvania laws to which the Plaintiffs are referring.

Therefore, the Court will decline to dismiss for failure to plead in accordance with Federal Rule of Civil Procedure Rule 8.

**III. Dismissal for Failure to State a Claim**

Defendant NEIU argues that Plaintiffs have not plead that Rayan was discriminated against on the basis of his disability under Section 504 of the Rehabilitation Act ("RA") and the Americans with Disabilities Act ("ADA"). Specifically, Defendant argues that since Rayan's very entitlement to the benefits at issue was founded upon his disabilities, it would be impossible to simultaneously argue that Rayan was discriminated against on the basis of his disability when the services turned out to be substandard. Defendant further contends that since an IDEA violation does not automatically raise a claim under the RA or

8

the ADA, that Plaintiffs have not sufficiently plead an RA or ADA claim.  It is not contested that Plaintiffs have sufficently plead an IDEA claim.

The same standards govern liability under the RA and the ADA.  *Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir.2009) (citing *McDonald v. Pennsylvania*, 62 F.3d 92, 95 (3d Cir.1995) ("Whether suit is filed under the Rehabilitation Act or under the Disabilities Act, the substantive standards for determining liability are the same.")).  Under either the RA or the ADA, a successful claim requires demonstrating that Rayan "(1) has a disability; (2) was otherwise qualified to participate in a school program; and (3) was denied the benefits of the program or was otherwise subject to discrimination because of [his] disability." *Id.* (citing *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3d Cir. 1991)).  Under the RA, public schools have an obligation to provide a free appropriate public education to disabled students. 34 C.F.R. § 104.33(a) (defining "appropriate education" in part as an education "designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met"). Thus, schools violate the RA and the ADA when they fail to meet the needs of a disabled student "as adequately" as those of nondisabled students.

NEIU maintains that "[a] plaintiff cannot make out an RA claim simply by proving (1) that he was denied some service and (2) his is disabled. The state must have failed to provide the service for the sole reason that the child is disabled." (Def.'s Br. at 9, Doc 6). This argument has been made, and rejected, before.  In *J.C. v. Lankeland School District*, the school district similarly argued that a plaintiff could not recover under the RA as they were required to show that a child was denied benefits "because of" his disability.  Civ. Act. No. 3:10-cv-1779, 2011 WL 1327439 at * 4 (M.D. Pa. Apr. 05, 2011).   Judge Munley,

however, noted that this "because of" requirement only applied to children under the age of three, seeking recovery under Part C of the IDEA, not children over three who were seeing recovery under Part B. *Id.* (comparing 20 U.S.C. § 1431, *et seq.* with § 1412, *et seq.*). This is the correct state of the law, laid out in *Andrew M. v. Delaware County Office of Mental Health & Mental Retardation*. 490 F.3d 337 (3d Cir. 2007). There, the Third Circuit analyzed the two different provisions and clarified that:

> the analysis is not the same under Part C of the IDEA as it is under Part B. As we have established, children denied services under Part B of the IDEA are "otherwise qualified" to participate in school and are denied that education because of their disabilities. However, children under the age of three, who are covered by Part C of the IDEA, are not entitled to a free and appropriate education under § 612 [of the IDEA]. More specifically, the only reason children receiving services under Part C of the IDEA are entitled to such services is by reason of their disability. Therefore, when an agency violates Part C of the IDEA, it does not use disability as a basis to deny a child something to which he is entitled. Rather, the state denies a child services to which he is entitled only because of his disability but on some other basis.

*Id.* at 350. In other words, school age children who are taken out of school in order to participate in an alternate program are thus denied a FAPE where that program is comparatively deficient. Under Part C, however, disabled children who are not yet school age receive services that they would not otherwise. Thus, the NEIU is correct to the extent that where there is "no legal obligation to provide any education to non-disabled students, the failure to provide FAPE itself cannot be the discriminatory conduct that supports a claim under Section 504." (Def.'s Br. at 10, Doc. 6). However, NEIU's supposition that Rayan, a disabled child *over* the age of three, "would have no entitlement to the benefit he claims to have been denied, namely a free and appropriate education" but-for his disability is generally not valid. (Def.'s Br. at 7, Doc. 6). The NEIU therefore misses the mark on the Third Circuit's analysis as the rule they rely on applies only to younger children under IDEA

10

Part C.  In fact, *Andrew M.* specifically determined that, while not a *per se* violation, "it is clear why violations of Part B of the IDEA are almost always violations of the RA." *Andrew M.*, 490 F.3d at 349-50; *see also Chambers v. School Dist. of Philadelphia Bd. of Educ.*, --- F.Supp.2d ----, 2011 WL 5041363 at *12 (E.D. Pa. Oct. 24, 2011) (concluding that "when a disabled child between the ages of three and twenty one is denied a FAPE, it violates the IDEA and § 504."). .

At oral argument, Defendant NEIU attempted to place Rayan in a third category of students: those over the age of three who are not denied a FAPE because there is no programming analogue for non-disabled children.  The Court is not persuaded by this reasoning.  In pertinent part, Part B of IDEA requires participating states to provide a FAPE "to all children with disabilities residing in the State between the ages of 3 and 21" so long as it is not "inconsistent with state law or practice" for children between ages three and five. 20 U.S.C. § 1412(a).  From the Complaint and Plaintiff's oral argument, it is averred that Rayan was receiving a FAPE as a participant in the Head Start Program.  It is further averred that he was removed from this public program on the basis of his disability in order to receive flawed early intervention services.  Thus, the Court cannot find, as Defendant NEIU argues, that there was no similar educational entitlement for non-disabled children of Rayan's age or that he was not otherwise entitled to that FAPE.

In further support of their argument, Defendant NEIU relies on *Allyson B. W. Montgomery County Intermediate Unit No. 23*, but this reliance is misplaced. Civ. Act. No. 07-2798, 2010 WL 1255925 (E.D. Pa. Mar. 31, 2010).  Under those circumstances, unlike here, there was no free and appropriate education to be had "as only children with disabilities, and not typical children [were] entitled to a FAPE." *Id.* at *15.  Moreover, *Allyson*

11

correctly noted that "[t]he difference between the IDEA and § 504 arises . . . where non-disabled children are not entitled to a FAPE . . . ." *Id.*  Under Part B of the IDEA, the section applicable to Rayan, this incongruence only manifests where educational services are not otherwise being provided to children between the ages of three and five.  Here, as it is alleged that other services were being offered to non-disabled children, the Court will not dismiss Plaintiff's claim to the extent it is predicated on the Rehabilitation Act.

Therefore, as the Plaintiffs have properly alleged a denial of a FAPE, the Court finds that this is sufficient to state a claim on as both a violation of the IDEA, RA and ADA.  As such, the Court will deny Defendant's Motion to Dismiss.

## **CONCLUSION**

For the reasons above, the Court finds that Plaintiffs have successfully plead that Rayan was discriminated against on the basis of his disability under Section 504 of the Rehabilitation Act and the Americans with Disabilities Act.  Further, the Court will decline to strike the Plaintiff's Complaint for lack of brevity under Federal Rule of Procedure Rule 8.  As such, Defendant's Motion to Dismiss will be denied.  An appropriate order follows.

 February 7, 2012                                                          /s/ A. Richard Caputo
 Date                                                                               A. Richard Caputo
                                                                                         United States District Judge